REINALDO OLLER, Plaintiff, Appellee, and Appellant, *v.* HERIBERTO PURCELL BAUZÁ, Defendant, Appellant, and Appellee.

Nos. R-63-84, R-63-86.        Decided March 26, 1965.

---

*Norman A. Pardo, R. Elfrén Bernier,* and *Miguel Marcos Contreras* for plaintiff, appellee, and appellant. *Guillermo Cintrón Ayuso, Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for defendant, appellant, and appellee.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Reinaldo Oller brought an action against Heriberto Purcell claiming damages suffered as a result of a fire which originated in a real property possessed by plaintiff as tenant and which property was completely destroyed due to said fire. The trial court determined that the fire was caused by a "defective" electric installation and rejected defendant's theory that the cause thereof was due to an overcharge of the electric lines because of the installation and the use by plaintiff of certain electrical equipment.[1] Specifically it concluded that Oller was diligent in notifying the lessor—by verbal requests—of the need for repairs and that he exercised due care to avoid the loss of the house leased. It granted

---

[1] In this respect, it is worth remembering that the obligation imposed by law on the lessor to deliver to the lessee the house leased requires that the former deliver it in such a condition as to permit the lessee to enjoy it as he intended. *Cole* v. *Escambrón Development Co.,* 73 P.R.R. 477 (1952). It is not venturesome to assert that it includes an electric installation adequate enough for the lessee to install the equipment invented by science for a more comfortable enjoyment of modern life.

the complaint and dismissed the counterclaim, and ordered defendant to pay $5,518, costs, and $500 for attorney's fees.

Both parties appealed from the judgment.

1. The first four errors assigned by defendant are directed to challenge several findings of fact supporting the judgment, namely: 1) that the fire was caused by a defective electrical installation; 2) that plaintiff was diligent in giving notice of the defect of the installation; 3) that defendant did not make the necessary repairs during the three years that the house was leased to plaintiff; 4) that plaintiff exercised due care to avoid the loss of the property.

An examination of the transcript of the testimony of the witnesses presented by the parties as well as an examination of the documentary evidence admitted shows that the evidence on these points was contradictory. The trial court settled the conflict and we have no grounds to disturb its weighing of such evidence. We do not agree either with defendant's criterion that the rational balance of the evidence should be on his side. He is right only as to the finding that defendant failed to make the necessary repairs during three years. There is reliable evidence to the effect that he made some repairs. But this fáct is not controlling, for it is clear that the repairs concerning the electric installation were not made. The position of defendant during the trial was to deny that he was so requested, and he relied, moreover, on the fact that prior to delivering the possession of the house to plaintiff he made some repairs.[2] *Burgos Quiñones* v. *Water Resources Authority*, 90 P.R.R. 597 (1964), is distinguishable, for it was held there that the fire had originated in the service lines of defendant, and not in the

---

[2] The description of the repairs carried out showed that it was rather a question of separating the electric power supply for three different premises, and that for that purpose, three independent meters were installed. It is true that the person in charge of the work spoke of other repairs, but they were not accurately specified.

interior installation of the damaged houses. Besides, the plaintiff, precisely unlike the case at bar, failed to establish the causal relationship.

Having reached the conclusion that the fire was due to a defective electric installation, the repair of which was requested by the tenant, the court correctly applied the rule for determining the liability for the loss of the thing when a landlord-tenant relationship exists. Civil Code, 1930 ed., §§ 1444, 1449, and 1452, 31 L.P.R.A. §§ 4051, 4056, and 4059. *Goenaga* v. *West Indies Trading Corporation*, 88 P.R.R. 847 (1963); *Cabinero* v. *Cobián Theatres*, 81 P.R.R. 926 (1960); *Costa* v. *Waldrop Photographic Co.*, 54 P.R.R. 75 (1939); *Ruiz* v. *Umpierre*, 49 P.R.R. 262 (1945); *Del Valle* v. *M. González & Co.*, 39 P.R.R. 739 (1929); *Ramírez* v. *Muñoz*, 33 P.R.R. 350 (1924).

The foregoing also disposes of the contention of comparative fault, since no negligent conduct can be attributed to plaintiff.

■■ 2. Defendant-appellant contends that the trial court committed error[3] in granting the complaint in spite of the fact that the evidence established that the notice given by tenant-appellee to make the necessary repairs to the electric installation of the leased property was made verbally, thus infringing the provisions of § 10 of the Reasonable Rents

---

[3] Plaintiff-appellee insists that the court should not consider this assignment which was not included in the original petition for review and which was raised for the first time in defendant-appellant's brief. It is not necessary to decide now whether appellant can only challenge the judgment on the grounds adduced in the petition for review, since in the case at bar, the additional ground was adduced *after* we had decided, in the exercise of our discretion, to review it, and it is not a question of a *partial* review.

On the other hand, the contention on the need for a written notice is set forth as a ground for insufficiency which could be considered in the review proceeding even though it had not been raised before the trial court. *Cf. Heirs of Castillo* v. *Sec. of the Treas.*, 83 P.R.R. 94 (1961); *Zalduondo* v. *Iturregui*, 83 P.R.R. 1 (1961).

Act, 17 L.P.R.A. § 190, as it read before it was amended by Act No. 67 of June 19, 1964 (Equity ed., p. 175) :[4]

"The lessor is bound to make all necessary repairs to the rented property during the period of the lease, in order to maintain it in a condition suitable for the use to which it has been devoted, and to maintain all its services in operation; Provided, That if the lessor fails to make the necessary repairs or fails to maintain all the services in operation, as herein determined, after having been requested to do so by a health officer or by the tenant through a written notice, the Administrator shall summon the landlord and the tenant to a hearing in order to determine the need for the repairs, and the need having been verified, he shall fix the reasonable amount thereof and shall order the owner to carry them out; Provided, That if the landlord should not make repairs within the time fixed by the Administrator, the latter shall authorize the tenant to make the repairs and to deduct the amount thereof from the rent in the manner which said Administrator may determine for the purpose. . . ."

To that effect defendant invokes the following language of the opinion delivered in *Rodríguez v. Lema*, 87 P.R.R. 582 (1963):

"Although it is our juricial duty to reconcile, whenever possible, the conflicting provisions of two statutes on the same subject matter, we must not forget that in the case of special provisions and general provisions the former prevail over the latter in everything expressly covered by the special provisions. This being so, it is clear that § 10 of Act No. 464 of April 25, 1946, in everything concerning *necessary repairs*, substitutes the provisions of §§ 1444, 1446 and 1449 of the Civil Code of Puerto Rico (1930).

"Regarding the lessor's obligation to maintain the thing leased in a condition suitable for the use to which it has been devoted, the provided clause of § 10 of Act No. 464 establishes

---

[4] The amendment of 1964 eliminated the two *provided clauses* of the text which prevailed at that time and vested power on the Administrator to establish rules and regulations to enforce the landlord's obligation pointed out to make the necessary repairs. See 17 R.&R.P.R. § 186–33, in effect since January 29, 1965.

another means whereby the Economic Stabilization Administrator may compel the lessor to comply with this obligation by determining the necessity of such repairs, fixing the reasonable cost thereof, and ordering the lessor to make them within a period fixed by the Administrator; and if the lessor fails to make them, by authorizing the tenant to make them at his expense and charge them to the lessor.

"Regarding the lessee's notice to the lessor of the necessity of such repairs, which according to §§ 1470 and 1449 of the Civil Code of Puerto Rico could be made verbally or in writing—10 Manresa, *Comentarios al Código Civil Español* 585 (Reus ed., 1950)—the first provided clause of § 10 of Act No. 464 requires the lessee to give notice to the lessor in writing. Once again the duty to be diligent imposed on the lessee, by reason of his being the person who maintains 'more direct and immediate relation with the thing during the term of the contract,' is consecrated by legislation. (Manresa, at p. 584.)" (Italics in original.)

A careful reading of the above-copied opinion will reveal that it should be limited to the facts considered therein and that it cannot be extended to an action which does not seek to recover damages for breach of a lease contract arising from the failure of lessor to make the necessary repairs to the thing leased in order to maintain it in a condition suitable for the use to which it has been devoted. Both the text of § 10, as it read at the time of the event which gave rise to the suit, and its present language, show that the notice in writing is required to bring an administrative proceeding with a view to a possible intervention of the Economic Stabilization Administrator in representation of the social interest in order to reconcile the conflicting views of the lessor and lessee on the aspect of the need for repairs and the cost thereof. In this sense, the statement contained in the opinion cited which labels the remedy of § 10 as "new coercive method," and which immediately following states that said provision "does not leave to the discretion of the parties, insofar as ordinary repairs are concerned,

any cause of damage which the lessor's indolence as well as the lessee's malice may produce," gains decisive significance.

The provisions of the subsequent § 13, 17 L.P.R.A. § 203, which imposes on lessor the duty to comply with the health laws and regulations, and the orders and provisions which the Secretary of Health may issue for the protection of public health and safety, lends support to our interpretation of the scope of § 10. Furthermore, Act No. 67 amended this last provision to include among the orders and regulations which must be complied with, those issued by the Water Resources Authority. Evidently the purpose of the Legislature is to maintain public safety, avoiding that any discrepancy between the parties—natural consequence of a contractual relationship intervened by the State—may defeat the social aim of a peaceful and safe enjoyment of the leased property.

On the other hand, from another point of view, the present action, justly weighed, is intended to recover compensation for the damages caused by an omission of the lessor—to make the necessary repairs—and it is framed within the general precept of extracontractual liability. *Torres* v. *Fernández*, 56 P.R.R. 459, 468–470 (1940). A provision which contemplates the performance of the contract will not be strictly applicable thereto.[5]

---

[5] Puig Brutau (II-II *Fundamentos de Derecho Civil* 274) interpreting a provision identical with § 1444 of the Civil Code, favors the solution that if the lessor fails to make the necessary repairs and they are made by the tenant, the latter has the right to recover the amount disbursed, but causing it to depend on the notice "so that the lessor shall preferably be the one to make, on his part, the necessary repairs. This duty of the owner of the thing is only subsidiarily transformed into the duty of reimbursing to the tenant the amount of the necessary repairs when the former fails to make them." He adds that "If even not counting a case of urgent repairs, the tenant shall have 'under his wing the right to rescind the contract with the corresponding compensation for damages, or only the latter, leaving the contract in force' (Puig Peña) and he actually decides in favor of the latter, we shall have a tenant who will continue to be so without the lessor making the necessary repairs and in exchange of recovering, instead, an indemnity."

3. Plaintiff's appeal is reduced to challenging the amount of compensation granted for the physical damages and suffering and mental anguish due to the injuries and burns received. The trial court states: "Oller suffered burns on his back, feet, face, chest, arms, and ears. He was hospitalized in the Professional Building Hospital from 7:00 a.m. to 1:00 p.m. the day of the fire, and then went to Clínica Pavía for a month. He was confined at his home for a week and then about three weeks in Hospital Auxilio Mutuo. He has scars all along his right arm, and from the shoulder to the elbow on his left arm." The pictures offered as evidence are eloquent testimony of the damages suffered. The pains must have been very intense; the result of the injuries is indelible.

■   Although we do not usually intervene with the court's discretion in assessing the amount of compensation, this is without doubt a case in which the amount awarded does not suitably compensate nor does it show a fair proportion to the damages suffered. The amount awarded for the concept indicated shall be increased to $8,000.

The judgment rendered by the Superior Court, San Juan Part, on March 1, 1963 will be modified, and as thus modified, it will be affirmed.